Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5530 | **DATE** | 8/11/2004 |
| **CASE TITLE** | Nona Farrar vs. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Officers' motion for summary judgment [68-1] is granted. Judgment is entered in favor of the City of Chicago on Plaintiff's Monell claim because Farrar was not deprived of a federal right. The Court will not exercise supplemental jurisdiction over the remaining state law claims against Plaintiff's sister. Plaintiff's motion for summary judgment against defendant Carmelita Farrar [67-1] is therefore denied as moot. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 1 2 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 82 |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | 2004 AUG 11 PM 4:05 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| NONA FARRAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 C 5530 |
| ) | |
| OFFICER EVERADO BRACAMONDES, ) | Judge Ruben Castillo |
| et al., ) | |
| ) | |
| Defendants. ) | |

AUG 1 2 2004

# MEMORANDUM OPINION AND ORDER

A family quarrel between two sisters, Nona and Carmelita Farrar, escalated into this lawsuit, which involves both sisters; three Chicago Police Officers: Everado Bracamondes, David Adams, and Salvador Moreno; and the City of Chicago. Plaintiff Nona Farrar alleges that her sister threatened her; the Officers retaliated, discriminated, and conspired against her; and the City failed to train its officers how to respond to domestic disputes. The Defendant Officers now seek summary judgment. For the reasons provided below, we grant their summary judgment motion and end this Court's involvement in this family quarrel. (R. 68-1.)

## RELEVANT FACTS[1]

Carmelita Farrar asked her sister Nona if she would pick up her daughter at school for one week. (R. 69, Defs.' Facts ¶ 2; R. 77-1, Pl.'s Resp. to Defs.' Facts ¶ 2.) Nona said she would do it, but the following day she called Carmelita to tell her she had a change of heart. (*Id.*) Carmelita was infuriated. (*Id.*) She called Nona some nasty names and threatened to beat her up. (*Id.*) After Nona hung up on her, Carmelita called back several times and repeated her threats to

---

[1] In this section, we refer to Plaintiff Nona Farrar and Defendant Carmelita Farrar as Nona and Carmelita for simplicity and clarity.

Farrar's voice mail. (*Id.* ¶ 4.) Not yet satisfied, Carmelita came over to Nona's apartment building and yelled these threats up at her from the building's entrance. (*Id.* ¶ 5.) Nona promptly called 911. (*Id.* ¶ 6.)

Officers Bracamondes and Adams responded to Nona's 911 call. (*Id.*) They knew nothing about her—except that she had called 911—until they arrived at her apartment. (*Id.* ¶ 9.) Nona told them about her argument with Carmelita and played them the threatening messages. (*Id.* ¶ 10.) After listening to the messages, Officer Adams laughed. (*Id.* ¶ 11.) After Officer Adams then told Officer Moreno, who had just arrived, about Carmelita's threats, they both laughed. (*Id.* ¶¶ 13-14.)

The officers then left Nona's apartment to look for Carmelita. (*Id.* ¶ 15.) They did not find her, so they returned to Nona's apartment building to complete the necessary paperwork. (*Id.*) A few minutes later, Nona exited her building and overheard Officer Moreno twice say, "maybe she shouldn't have had them." (*Id.* ¶ 17.) Officer Bracamondes wrote out a police report and gave it to Nona. (*Id.* ¶¶ 18-19.) He also gave her a Domestic Incident Notice, which outlines the procedures to obtain an order of protection and an arrest warrant. (*Id.* ¶ 19.) Nona asked Officers Bracamondes and Adams to arrest Carmelita and provided them with her sister's address. (*Id.* ¶ 20.) They told her that they could not arrest her sister. (*Id.* ¶ 21.) Before leaving the scene, they looked for Carmelita again, but still could not find her. (*Id.* ¶ 22.) Nona went back inside and went to sleep. (*Id.*; *see* R. 71, Defs.' Exs., Ex. D, Farrar Dep. at 201, line 15.)

## ANALYSIS

### I. Federal Claims

#### A. § 1983 Claims

Farrar claims that the Defendant Officers deprived her of her First Amendment right to free speech and her Fourteenth Amendment right to equal protection. Under 42 U.S.C. § 1983, a party acting under color of state law is liable for depriving another of a federal right. *See Lehn v. Holmes*, 364 F.3d 862, 872 (7th Cir. 2004). It is undisputed that the Defendant Officers were acting under color of state law. It is also undisputed—because Farrar failed to place all the required elements of the alleged constitutional violations in dispute—that they did not deprive Farrar of a federal right. *See Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir. 1994) (explaining that facts are deemed admitted when a party fails to properly place them in dispute). Accordingly, we grant the Defendant Officers' motion for summary judgment with respect to all of Farrar's § 1983 claims.

##### 1. First Amendment Claim

Farrar claims that the Defendant Officers retaliated against her in violation of the First Amendment when they decided not to investigate or arrest her sister Carmelita. To establish a First Amendment retaliation claim, a plaintiff must prove that: (1) she engaged in constitutionally-protected speech; and (2) her protected speech was a substantial or motivating factor behind the defendant's action. *Rasche v. Vill. of Beecher*, 336 F.3d 588, 596-97 (7th Cir. 2003). Even if the plaintiff proves these two facts, the defendant is not liable if he proves that the plaintiff was not harmed because he would have acted identically in the absence of the plaintiff's protected speech. *Id.*

3

To survive summary judgment, Farrar must identify facts that place in dispute whether her protected speech was a substantial or motivating factor behind the Defendant Officer's actions. *See McGreal v. Ostrov*, 368 F.3d 657, 672 (7th Cir. 2004). Farrar claims that her constitutionally-protected speech is her vocal and public criticism of the Chicago Police Department. The only evidence in the record supporting this claim is her deposition testimony and a transcript of an October 21, 1999 Chicago Police Department board meeting.[2] (R. 77-2, Pl.'s Facts, Ex. 1, Board Meeting Transcript). Farrar claims that this protected speech was a substantial or motivating factor behind the Defendant Officer's actions. Farrar, however, has provided no evidence that the Defendant Officers knew anything about her protected speech. Indeed, there is no evidence in the record that they knew who Farrar was. Therefore, we find that Farrar has failed to identify any evidence linking her constitutionally-protected speech to the Defendant Officer's actions. Moreover, the Defendant Officers' decision not to arrest Carmelita Farrar was fully justified because she lived in a different police district. (R. 69, Defs.' Facts, ¶ 23; R. 77-1, Pl.'s Resp. to Defs.' Facts ¶ 23.) Accordingly, it is undisputed that whatever

---

[2] We note that Farrar has failed to establish a proper foundation for any of this evidence. Her deposition testimony is far too vague and general. The following are examples of Farrar's deposition testimony: "I've assisted victims of law enforcement abuses, I've assisted victims of fire department, I've filed lawsuits against the police, the City. . . . The rallies, there have been so many rallies that I participated in. I said that I attended the trial that he – where he was trying to get his job back and I tried to organize a going away party when he couldn't get his job back. I did plenty of things regarding Birge. . . . But I mean I have an idea how the Chicago police knew that I was working with Citizens Alert. Not that I even worked with them. I simply attended meetings regarding John Birge." (R. 71, Defs.' App., Ex. D, Farrar Dep. at 232-35.) And Farrar only produced the transcript when she was conducting her final deposition. The witness, Officer Moreno, had no knowledge of this police board meeting, so Farrar has not provided the Court with any foundational or authenticating evidence. We do not base our decision on this ground because the record as a whole and Farrar's litigation history establishes that she has publicly criticized the police, the fire department, and the City. Whether the Defendant Officers were aware of her criticism is an entirely different matter.

4

protected speech she engaged in was not a substantial or motivating factor behind the Defendant Officers' actions.

### 2. Fourteenth Amendment Claim

Farrar claims that the Defendant Officers discriminated against her in violation of the Fourteenth Amendment's Equal Protection Clause when they decided not to investigate or arrest her sister Carmelita. Farrar is proceeding under a "class of one" equal protection theory.[3] To establish a "class of one" equal protection claim, a plaintiff must prove that: (1) she has been intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a "totally illegitimate animus" toward the plaintiff by the defendant.[4] *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004).

To survive summary judgment, Farrar must place both elements of her "class of one" equal protection claim in dispute. Farrar claims that she was treated differently from others similarly situated because the Defendant Officers told her that they could not arrest her sister and that she would have to file charges with the State's Attorney. Farrar, however, has not identified any evidence that the police would have made an arrest if a similar request was made by a

---

[3] We find that Farrar is only pursuing a "class of one" equal protection claim because she did not address (in a coherent manner) the Defendant Officers' argument that she has failed to establish a traditional equal protection claim.

[4] The Seventh Circuit recently noted a tension between the standard used in this opinion and the standard used in *Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000). *See Ind. Land Co., LLC v. City of Greenwood*, No. 03-3662, — F.3d — (7th Cir. Aug. 10, 2004). The *Hilton* court stated that "to make out a prima facie case the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." 209 F.3d at 1008. Using this slightly different standard would not alter our holding.

similarly-situated individual under similar circumstances. More to the point, Farrar has not even identified someone who she claims is similarly situated. *See id.* at 1005. Her belief that she was treated differently is not evidence that she was treated differently. Additionally, all of the evidence in the record indicates that the Defendant Officers did not treat Farrar differently. (R. 71, Defs.' Exs., Ex. F, Bracamondes Dep. at 242-46; Ex. G, Adams Dep. at 150; Ex. J, Garcia Dep. at 36, 42.) Accordingly, it is undisputed that Farrar was not treated differently from another similarly-situated individual.

### B. Federal Conspiracy Claim

Farrar claims that the Defendant Officers conspired to deprive her of her civil rights in violation of 42 U.S.C. § 1985(3). To establish a § 1985(3) conspiracy, a plaintiff must prove the following four elements: "(1) the existence of a conspiracy; (2) a purpose of depriving a person or class of persons of equal protection of the laws; (3) an act in furtherance of the alleged conspiracy; and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). Because it is undisputed that the Defendant Officers did not deprive Farrar of a federal right, Farrar cannot establish a § 1985(3) conspiracy. Farrar has also failed to place the existence of the conspiracy in dispute or to identify any reasonably-related overt acts. *See Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000). Accordingly, the Defendant Officers are entitled to summary judgment on Farrar's § 1983(3) conspiracy claim.

## II. Intentional Infliction of Emotional Distress Claim

Farrar claims that the Defendant Officers intentionally caused her emotional distress when they responded to her 911 call. Under Illinois law, in order to allege intentional infliction

of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct, (2) intent to inflict severe emotional distress or knowledge that such distress is highly probable, and (3) that the defendant's conduct did in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). "[T]he tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Id.* (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). Liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976).

The Defendant Officers are entitled to summary judgment because Farrar has not identified any extreme or outrageous conduct. The Defendant Officers' decision not to arrest Farrar's sister was neither extreme nor outrageous. It was reasonable and justified. Additionally, the Defendant Officers' laughter and inappropriate comments, while uncalled for, are precisely the types of trivialities that are not actionable under Illinois law. *See McGrath*, 533 N.E.2d at 809. Farrar has also failed to identify any severe emotional distress. Stress, nervousness, anxiety, and sleeplessness that do not require any medical treatment are not severe emotional distress.[5] *See Swanson v. Swanson*, 257 N.E.2d 194, 196 (1970); *see also Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (stating that severe emotional distress is required because "[i]ndiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts"). Finally, Farrar herself merely claims that she suffered "some emotional distress." (R. 71, Defs.' Exs., Ex. D, Farrar Dep. at 223.) Accordingly, the Defendant

---

[5] Farrar has not seen a doctor or mental health practitioner as a result of the Defendant Officers' actions. (R. 71, Defs.' Exs., Ex. D, Farrar Dep. at 224.)

Officers are entitled to summary judgment motion on Farrar's state-law intentional infliction of emotional distress claim.

## CONCLUSION

We fully grant the Defendant Officers' summary judgment motion. (R. 68-1.) We also enter judgment in favor of the City of Chicago on Farrar's *Monell* claim because Farrar was not deprived of a federal right. *Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978) (stating that the municipality is only liable when a policy or custom deprives the plaintiff of a federal right). Additionally, we decline to exercise supplemental jurisdiction over the remaining state law claims against Farrar's sister. Farrar's summary judgment motion against her sister is therefore denied as moot. (R. 67-1.) The Clerk of the Court is instructed, pursuant to Federal Rule of Civil Procedure 58, to enter judgment in favor of the Defendant Officers—Everado Bracamondes, David Adams, and Salvador Moreno—and the City of Chicago.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: August 11, 2004